We have three cases scheduled for argument this morning. The first case is DEALERTRACK v. HUBER, 2009-15-66. Mr. Dinger, good morning. Good morning. I may please the Court. Subject to any questions that the Court may have, I plan to... You may have one or two. It wouldn't surprise me, Your Honor. I plan to focus my argument on three issues. One, the construction of the term communications medium in the 841 patent. Two, the interpretation of the central processing means in certain claims of the 841 patent. And third, whether the method claimed in the 427 patent constitutes patentable subject matter under Section 101. Let me turn first to the communications medium. I think the District Court and the parties recognized that the phrase communications medium generally conveys the meaning of a network for transferring data or a medium for data to travel. And there is no question that in 1995 as it is today, that is what the Internet did. The only question, and I suggest the question properly framed, is whether the 841 patent... So the Internet is not after a rise in technology? No, the Internet clearly existed in 1995. I don't think there is any dispute about that. And it clearly was a network over which data was transmitted. It wasn't anything else. So the question properly framed, I suggest, is whether the 841 patent itself excluded, clearly excluded the Internet from a term that would otherwise be understood to encompass the Internet. And there really is nothing in the 841 patent that does that. I didn't quite get it as a question of whether it was excluded. I sort of got the feeling, at least from their viewpoint, the question is whether it was included. I don't think there was any dispute that if the meaning of that phrase is understood to be a network for transferring data, it was also understood at the time that the Internet was a network for transferring data. So the question is, is there anything in the 841 patent which teaches persons of ordinary skill in the art that in the universe of networks for transferring data, the Internet is not included for purposes of this patent? Well, if it was so clear, why was there an effort to amend the specification to add references to the Internet? I think it was...the record isn't clear why that happened. I suspect it was an oversight. But the fact is, the 841... Which was an oversight, the effort to include it? No, no, no, the omission of the Internet, because it's a divisional from the 403 patent, and the 403 patent did include the Internet as a communications, as an example of a communications medium. It was amended. It was amended, but the amendment was loud, and the 841 patent incorporates that by reference. And this Court has ruled that with related patents, and these two patents were clearly related, the same term should have the same meaning, unless there is something in the specification which clearly teaches to the contrary. You have some suggestion about new matter. What's your comment about that? Two things, Your Honor. I mean, it was certainly not new matter with regard to the earlier patent, because the Internet amendment was loud. That amended patent is incorporated by reference into the 841 patent. Maybe it was improperly allowed. Well, maybe it was, but it is disclosed, by reference at least, in the 841 patent. Well, does the 841 patent, I mean, I'm sorry, does the 403 patent, the original, the current patent, describe communications medium as including the Internet? It does. How so? It is at the page here, at page 202 of the appendix, which is column 17 of the 403 patent, beginning at the bottom. Although illustrated as a wide area network, it should be appreciated that the communication… Which line are you on? I'm sorry. Is this column 17? Bottom of 17. Yeah. Which line? Starting at 64. Okay. Although illustrated as a wide area network, it should be appreciated that the communications medium could take a variety of other forms. For example, a local area network, a satellite communications network, fast forward, the Internet, ordinary telephone lines or private lease lines. And the communications medium, I mean, clearly the 403 patent teaches that the Internet is an example of a communications medium, and that term ought to be construed in the 841 patent in a similar fashion. Moreover, the patent, the 841 patent itself teaches that the term communications medium is not limited to the particular examples, as the district court, we contend, erroneously concluded. The last, in the same passage in the 841 patent, which lists the various examples, admittedly not in this case, including the Internet, they conclude, although I should add that they do refer to a wide area network, and I think the evidence was that the Internet is an example of a wide area network. So in that sense, at least, the district court was incorrect in saying that the Internet, it wasn't listed by name, but what it was, the wide area network, was listed. Mr. Dinger, the clock is running quickly, and I'd like you to turn to the 427 patent so we can address the 101 issue. Sure. In what sense does the claim in question here, in what sense is this claim any different from the claims in Bilski? The claims in Bilski, the invention in Bilski, if you were, was an algorithm, a mathematical formula which, when calculated, provided useful information. Well, there was no specific algorithm in Bilski. There was an algorithm. There was a methodology for calculating, for computing information. Well, isn't there simply an abstract idea here in this claim, namely, that if you want to deal with multiple parties, an efficient way is to deal through an intermediary? Not under the— Is that the underlying abstract idea? Not under the claim construction that the district judge applied. The district judge concluded that the preamble to the claim, the computer-aided method, was necessary to, was a limitation, was necessary to add meaning to the— Let's hypothetically suppose that there were no reference to computer-aided in the 427 claims. We just had this method of sending applications out for approval. Would that be a compatible subject matter for Bilski? I think under the circumstances, it would be, particularly if you take into account the disclosure in the 403 patent, which is expressly incorporated by reference. I think the district judge was correct in saying that you can't read the specifications of the 403 patent and the 427 patent and not come away with the conclusion that this is not just the idea— Wait, wait. I'm not sure what your answer is to my question. Is the answer that it's unpatentable or that it's patentable? You stripped out the computer-aided part of it. My position would be if the only thing that was different was the deletion of the words, the phrase computer-aided, it would still be patentable because the proper interpretation even of that claim in light of the specification is that it is not the idea of, for example, sending credit applications simultaneously to a number of lenders. So what you're saying is that it would have to be computer-aided whether or not that language appeared in the claim? That would be my position, but— How—is the basic idea here patentable or unpatentable under that assumption? The idea of—it's hard to answer that question because it is hard to imagine that simultaneity, the kind of method that is described in those claims being carried out without the kind of automated network that is involved— It's just fraud. Is it patentable or unpatentable? If the patent were simply the idea of sending credit applications simultaneously or sequentially to various lenders and either waiting for a response or letting them send it on to somebody else, no, I'd say that probably isn't a—that by itself is not patentable. That was a recognized need. That's why this automated system is patentable because— So it's the addition of the computer, in your view, that makes it patentable? In this case, yes. Why should that make it patentable? There's no specific algorithm here. It's just the concept of— Well, but there are specific—I mean— Wait, wait. I'm sorry. There's no specific algorithm here. It's just the concept of using a computer to assist in this process. I suggest that's not true if, as the district court, I think, overlooked, the 403 specification is incorporated by reference. It isn't just the idea of using a computer. It is the specific algorithms that are clearly disclosed in the 403 patent that disclose a particular technology for achieving the idea, not just the idea. Are you arguing in your brief that the district court misconstrued this 427 patent? It's not that—he properly construed the claim. What the district court failed to do is recognize that there was— the district court concluded that there wasn't a particular machine, that the court correctly concluded that each of the steps of the— But you seem to be arguing that somehow the idea of computer-assisted incorporated algorithms, which were in the 403 patent. I didn't see that you argued that in your brief. Well, I think we did. I think we argued— Can you show me where you argued that it incorporates the algorithms from the 403? When we argued that the claim in the 427 patent satisfied the machine test, one of the ways in which it did was by virtue of the algorithms. I think it's—I'd say starting at page 48 of our brief, we say that they are tied to a particular machine. What I didn't see was any reference to incorporating algorithms which were in the 403 specification. I'm not sure we said that specifically, but I think that's implicit in the district courts. Let me ask the question a little bit differently, if I may. I take it you would agree that if all we have— I'm into my rebuttal time. We'll give you some more time. Okay. If all we have is a standard computer, that may not be enough to meet the machine test. Well, it may or may not. I think after Bilski v. Kapos, if all the computer is doing, and whether it's a general-purpose computer or a specialized computer, if all the computer is doing is serving as a powerful calculator, calculating an algorithm, calculating a formula, I think we'd all agree that that does not take what is otherwise an abstract idea and make it patentable subject matter. All right. Let me ask this question then. Assuming a claim fails to meet the machine test, and we're not here arguing transformation because that's off the table, can it still be patentable? I think that follows from the Supreme Court's decision. If it is not otherwise—if it prevents— if the presence of the machine, the computer, prevents—adds concreteness to what would otherwise be an abstract idea. Here, for example— No, I'm flipping it the other way. The machine doesn't add anything, so it fails the machine test. All right. Can it still be patentable? And if so, why? If all that is involved is an abstract idea, and the cases in which the Supreme Court has discussed what is an abstract idea consist primarily of mathematical formulas. What I'm really asking is if it fails the machine test, is it necessarily an abstract idea? Or can it fail the machine test and still not be an abstract idea? I don't know the answer to that. I'm pretty sure that this doesn't fail the machine test. But the answer is I don't know. I mean, the it is— You say that you don't think this fails the machine test, but yet you haven't really given us a persuasive answer as to what it is that the computer imparts to this claimed invention in terms of patentability. What the computer does here, what the central processor does is function as a traffic cop. It takes instructions and it takes data and sends it simultaneously to one. We don't even really know that. The claim doesn't say that. The claim simply says a computer-aided method. And then it talks about sending, receiving. As construed by the district court, however, what the court interpreted computer-aided to mean was that the computer, and indeed the court identified as the central processor, carries out each step of the method. And I think to understand what that means, one must refer back to the 403 specification, which describes in considerable detail how the central processor carries out these functions of serving as a traffic cop, circulating the information, sending it in accordance with the instructions provided by the automobile dealership. Let me ask you a slightly different question. It seems to me there is an abstract idea in this claim, and I think that abstract idea is something like if you want to efficiently deal with multiple parties, do it through an intermediary. I mean, that's one expression of sort of the underlying abstract idea. That is what it does, yes. So if you'll accept that that's the abstract idea that underlies this, then is your argument that, well, this is nonetheless patent eligible because it's a specific application of that abstract idea in the context of a loan? It is the implementation of a technology to carry out that idea. It is the development of a networking technology that allows a dealer to accomplish something that was not feasible before this technology, which is to greatly accelerate the process of sharing information by making use of what was at the time novel networking technology. It is the creation, the invention, if you will, of a technological way to implement an idea which distinguishes this case from simply an attempt to patent an abstract idea. You can take any technology and abstract from it and say the goal is to achieve X. But what's inventive here is the technology to implement X, as opposed to the cases where a technology, all the technology does is do something that in theory a human being with a pad and paper and sufficient time could do. You would argue that Bilski, the so-called Bilski invention, falls in that last category. I would, yes. That your claims do not. Correct. You would argue. That is my argument, Your Honor, yes. That's correct. The difficulty here, of course, is that the Supreme Court instructs that we should take guidance from Benson, Fluke, and Deere, and these claims, it seems to me, don't really resemble the claims in either of those three cases. They don't, I suggest, and that's why they are not abstract ideas. They are the technological implementation of a goal that was not possible without the technology. So if in Bilski itself they said a computer-assisted method of hedging, same claim otherwise, it would have been patentable? I wouldn't say that because the computer was, it was not a technological solution. In a sense, it was just the computer functioning as a sophisticated calculator. It was not, and that is not enough, both before and after Supreme Court cases. All right. Thank you very much. We will restore your four minutes of rebuttal time, and since we gave you extra time, let's add four minutes to Mr. Rogers' time, and we'll go from there. You're dividing your argument correctly? That's correct, Your Honor. I am Lawrence Rogers for Appellee and Cross-Appellate Route 1, and I will be directing my comments to all issues except for Bilski, and the Bilski issues will be handled by counsel for Finance Express, Mr. Hadley. Well, in that case, perhaps we should adjust the clock a bit, and let's put your time back to 10 minutes. No, we'll add the four to Mr. Hadley's time, so we'll start with 10 minutes, with two minutes for rebuttal on the cross-appeal. All right? All right. Very good. Thank you. Thank you, Your Honors. May it please the Court. I'd like to start with communications medium, and I think the Court had it just right that the issue isn't what's not included. It's whether or not communications medium includes the Internet in this case, and our position, of course, is that it does not. Internet is not embraced within communications medium, and the key to this, we think, is the prosecution history. You go to the prosecution history, and it demonstrates that the applicants knew that the term communications medium did not embrace the Internet. What did they do because of this? They sought to add the word Internet into the specification in two places to broaden the meaning by example of communications medium to embrace the Internet, and when they did that, the examiner, because they also tried to add the word into certain claims, this caught the examiner's attention, and he required that the word be removed not only from the claims but from the specification, and that's key. Now, one thing I want to point out is that Delatrach had, this is our primary argument regarding the meaning of Internet as whether it's in communications medium or not, and Delatrach had two briefs and 30,000-some-odd words or 30,000-some-odd times to comment on this issue in their briefs, and they say not one word about the prosecution history and what happened. What did it mean when the word Internet was put in and required to be removed by the examiner? Isn't it a little hard to envision a communications medium in 1995 that did not recognize the existence of the Internet? Well, we know that... You're not saying there was no Internet. Oh, no, no, and the inventors knew about the Internet, but they didn't include the Internet in their patent, in their specification, and then they tried to add it into the prosecution history. They didn't expressly include it. Pardon? They didn't expressly include it, but then they didn't expressly exclude it either. There is nothing in the patent specification that includes the Internet. That's right, and there's nothing that necessarily says... There's nothing that says the Internet is not part of communications medium, but a person of ordinary skill in the art reading that would recognize that the Internet was not a communications medium by virtue of what the patent says elsewhere. Well, the patent does talk about a wide area network. Exactly. Isn't that what the Internet is? Not in the context of this patent, and you learn that from the prosecution history. As we pointed out in our brief, it's the way they inserted the word Internet into the prosecution history, into the specification that matters here. Apart from the prosecution history, it would include the Internet, right? I'm sorry? Apart from the prosecution history, it would include the Internet. Not in this patent, no. The hypothetical is. If you take the word... It's an abstract matter. It would include it, right? If you just say communications medium in the abstract, it might include the Internet, if you said nothing else. No, if you say wide area network. A wide area network. Does that not include the Internet? Not as used in this patent, no. But as a general practical matter... If somebody said those words out on the street to a bunch of people knowledgeable in the industry, what would you think they would think? In 2011, they might think the Internet. 1995. In 1995, conceivably, they might think it might include the Internet. But there's no evidence of that in this patent and no evidence of record that anyone did think of it as being the Internet. But importantly, when you look at what happened in the prosecution history, the prosecution history, when they added the word Internet, they added it after the words or other forms. So the patent would have said, if the examiner had allowed it, wide area network, comma, or other form of network, including... And then they make the list. The Internet. So they said that the Internet was an other form of network from wide area network. And they're telling everybody, they're telling the public, that the Internet is not the same thing as the WAN of this patent. Whatever else it may be in the abstract, it was not the WAN of this patent. What are they telling the public by incorporating the 403 patent, which specifically mentions the Internet? What they did is they incorporated the application for the 403 patent as filed. And the application did not include the words Internet. That was also added by amendment later. And the fact is, if the 841 specification actually did incorporate the 403 patent with the word Internet in there... But wasn't the word Internet in the application at the time that the incorporation by reference was made? Yes. At the time that the incorporation of the application was made, the word... But the application is what is as filed. This is for purposes of Section 120 to relate back to obtain the benefit of the 403 patent's filing date. That's why the patent incorporates by reference the application as filed. Well, isn't there a difference between claiming the benefit of an application and incorporating the application by reference? Yes, you have to... There is. If you incorporate an application by reference, you're incorporating what's filed as the application. And what was filed did not say Internet. I mean, you don't have to... To claim the benefit of the earlier filing date, you don't have to use the words the subject matter is incorporated by reference, do you? To my knowledge, I believe that's correct. However... But here, those words were used. But in relation to the application, not the patent. But the patent itself is referenced. It's a cited reference, right? The patent is cited... No, it's not cited as a reference. The patent number is said incorporate by reference... It says reference is cited, and the 403 patent is under there, isn't it? The 403 patent shouldn't... If it's incorporated... If the 841... No, no. Answer my question. Under reference is cited, the 403 patent is listed, is it not? I do not have that. But if it is, then it is. I mean... But the 403 patent is not prior art as a reference cited to the 841. No, but in terms of looking for the definition, we have, including our other cases, we have given significance to the fact that there's a reference to it. And there is a reference to the patent itself as well as a reference to the application, correct? There is a reference, incorporation to the application, and then a reference to the patent. That's correct. However, importantly, if this application really did incorporate the patent, the 403 patent, with its reference to Internet by reference, if it did incorporate that, then the examiner shouldn't have had to and wouldn't have ordered the deletion of the word Internet. Because if it was already in the 841 patent by reference, why is the examiner ordering the deletion of the word Internet? If they properly incorporated that, the examiner wouldn't have done that and they wouldn't have acquiesced. The fact that the prosecution history required the removal of this word and that they acquiesced shows that it wasn't a WAN, the Internet wasn't a WAN by virtue of how they inserted it. It proves on the record that the 403 patent with its word Internet wasn't incorporated by reference either. And because of this, because it was new matter and their expert testified that the only reason the Internet could have been ordered, deleted, that he could see on the record was that it was new matter, we believe that's telling. And the Baldwin case, which we cited, the Baldwin graphic system case, is really on all fours. In that case, they tried to broaden the specification. The examiner required the broadening to be deleted, to put back the original. And then in court, the claim term was construed in that context to not incorporate, not include the new matter that was ordered to be deleted. That is exactly our case here. Any final comment? That's what I have for a communications medium. And for routing, if I might, Your Honor, I know I'm in my rebuttal period. Well, you've got 30 seconds to make a point. Okay. I just want to talk about routing. The court got, the district court got the word routing erroneous that it's defined twice in the patent. It's distinguished from selecting funding sources. It means sequencing or order and timing of sending a credit application. The patent is completely consistent with this. The word routing is a claim limitation in all claims. There's no evidence whatsoever that the system of Route 1 does routing in the sense of being sequencing in order of sending a credit application. And as a consequence, there can be no infringement as a matter of law because that was our position on summary judgment. The court misconstrued routing. There's no assertion by deal attract that if the term routing appearing in all claims is a limitation means what we say it means. There's no contention of infringement. Basically, a different claim construction would have freed you from infringement. Yes. If the claim is properly construed, we don't do what the word routing means in the claims. All right. Thank you very much. Mr. Hadley. And you will have nine minutes. Good morning, Your Honors. Good morning. The analysis of the Section 101 issue is exactly as Judge Dyke expressed in his questions to counsel. The way you look at the 427 patent for compliance with Section 101 is to first read the claim limitations without computer-aided in the preamble and ask whether those limitations express patent-eligible subject matter. If they do not, then you ask yourself, does the words computer-aided in the preamble add anything significant? Why do you ignore the computer-aided language? The computer-aided language is in the... The first thing that you need to do is try to determine whether the limitations themselves express an abstract idea. That's the teaching of Bilski. Bilski looked at the claim limitations. Doesn't... Wouldn't that methodology apply for any process? They say it's a process for vulcanizing rubber, and we know there's at least one case that dealt with that. And you say, well, let's just punch through and find what's the essential underlying concept here, and then we'll conclude whether the vulcanizing makes any difference. I'm not suggesting that the first thing you do is look at the... essentially the underlying concept. You have words computer-aided in the preamble of this claim. In the dire case that you're referring to, the use of a machine was reflected throughout the limitations. So when you looked at the limitations themselves, it was... The Supreme Court concluded that you were not dealing with an abstract concept. You were dealing with a method that was essentially tied to a particular machine for curing rubber. In this case, when you look at the limitations of the claims, without computer-aided, what you have and what counsel admitted was essentially an abstract concept that preempts the entire concept of soliciting credit for multiple lenders through an intermediary. Now, why is that an abstract idea? I can see that the abstract idea might be that if you want to efficiently deal with multiple parties, go through an intermediary. To me, that's an idea. But here, it's more specific. It's talking about applying that idea in the context of seeking approval for a loan application. Does that make a difference? I don't think so, Your Honor. Essentially, you are talking about the entire field of seeking a loan application from multiple lenders. But isn't that a specific application? I mean, the idea, for example, of going through an intermediary is something where I could say, well, if I want to make efficient use of my lunch hour, I could ask my secretary to go out and get me a sandwich at the first sandwich place that doesn't have a line. It's the same concept here, going through an intermediary to approach multiple sources. But that's a different application than this one. The intermediary here could be anything from an email to a fax to a courier. If you look at what is claimed, it's essentially data gathering and forwarding data and waiting for a response. And the only thing that is application-specific is that you put it in the lending context. I don't think, and I think the case of support, that that is not specific enough and tied specifically enough to a particular application to take it beyond an abstract idea. Let me ask you the same question I asked the opposing counsel. Let's assume it fails the machine test, because that's basically what you're arguing, isn't it? Does that necessarily mean it's an abstract idea by definition? I don't think by definition it means it's an abstract idea. I think if you read the Bilski decision, the Bilski case does leave room. Which Bilski? The Supreme Court decision. Bilski v. Capos. Correct. Bilski v. Capos. I think that the Supreme Court left open the possibility that if you fail the machine test, that you still have to look to see whether there is an abstract idea or not. I think this particular patent does not come close to falling within what has to be a fairly narrow circumstance under which a patent fails the machine test and yet still is patentable because it's not an abstract idea, a law of nature, or a physical phenomenon. What are your criteria for getting there? Assuming it fails the machine test, but it's still not an abstract idea. How do we tell? That's a difficult question and it's a question that even the Supreme Court wasn't able to answer. And I don't think that since the Bilski v. Capos decision, this Court has answered. But I think what you have to do is look at the claims and see if they are written so broadly that they would essentially preempt an entire concept in the abstract, whether you're talking about an algorithm or simply an idea that's expressed as a series of steps. Let me just back you up for one moment. Yes. They seem to be suggesting they're relying on the machine test. They say they satisfy the machine test. What I heard them say was that they weren't relying on the Supreme Court's decision which seemed to allow some patents that didn't satisfy the machine or transformation test. Do you understand that the Supreme Court in Bilski was approving our definition of the machine test to the extent that the machine test is useful? In other words, our concept of the machine test said the machine had to impose meaningful limits. Is that appropriately still part of the test after the Supreme Court's decision in Bilski? Yes, it is. The Supreme Court, I believe unambiguously, approved of this Court's expression of the machine test as a useful clue. And looking at this Court's precedence on how you apply that machine test, and I think one of the most instructive cases is in Ray Allipat, where the Court said that a general purpose computer doesn't satisfy the machine test, but if it's specifically programmed for a particular application, it does. And the facts of our case illustrate exactly why the patent does not satisfy the particular machine test. Council said that the patent follows algorithms that are contained in the specification. Well, if you look at those algorithms, which are in Figures 8a and 8b, it's simply a repeat of the claim language excluding the computer-implemented language in the preamble. And in this case, what DealerTrack did, they asserted infringement against my client, Finance Express, who has a loan application system. That system at one time included software, programming software in a processor that allowed the loan applications to go in a way that was described in the patent, namely, it's substantially the same time to a number of potential limiters in the industry that's known as shotgunning. Before the 427 patent issued, my client took that software out of its general purpose computer. Now, you would have thought that that would avoid an infringement lawsuit, particularly under Rule 11. It didn't. We got sued anyway. So how did DealerTrack justify suing my client after my client took out the software, the special programming, before the patent issued? Well, they said, look, this patent is broad enough to essentially cover the mental idea of a dealer deciding how fast and in what sequence to press buttons on a computer. And if they mentally decide that and then press the buttons on a computer, that infringes these claims. Well, that's exactly the kind of abstract idea that is not patentable. Just because somebody adds a computer into a process and makes an idea occur or implements an idea much more quickly, that's not patentable. And I think what you essentially have here is the claim in Bilski with the words computer-aided in the preamble. And the Supreme Court, I think if one thing comes out of the Bilski case, beyond the holding, it's that you don't save a patent from ineligibility by adding words like computer-aided in the preamble. And I think, just as a final point, that this claim is remarkably similar to the CyberSource claim, Claim 2, that was considered by this Court on Tuesday, where the words over the Internet were added into the preamble. It's the same sort of situation. You have computer-aided in the preamble to an abstract idea in CyberSource you had over the Internet, which was added in the preamble to an abstract idea. We have one more question. One other question for you. I take it there has been no addressing of 102 and 103 issues in this out there. Everything is in terms of his patent, right? Has the obviousness question been addressed? I don't believe that it was addressed on summary judgment. That was going to be an issue at trial. And then the Court found that the patent didn't satisfy Bilski. All right. Thank you very much. Mr. Dinger. Very briefly, Your Honor. Mr. Rogers suggested that the claims of the 427 patent could be satisfied by just a human messenger on a bicycle. I think the short answer to that is not under the claim construction that the District Court adopted, which was the claim construction, I should add, that the defendants urged on the Court, albeit before this Court's Bilski decision. The District Court ruled that every step of the 427 method had to be carried out by not just a computer, but the central processor that's referenced in the 427 patent and described in further detail in the 403 patent. Wait a minute. Where does the District Court say in its construction that incorporates the central processor shown in the 403 patent? No, the District Court didn't say 403. But that's the only way to make sense of what the District Court did because the central processor is in fact described in the 403 patent, much more so than in the 427 patent itself. The 427 was a continuation in part that expressly incorporated by reference, but did not repeat all of the disclosure in the 403 patent. And you're correct. The District Court did not refer to the 403 disclosure in construing the claim. But I suggest that's the only way to make sense of what the District Court did when it construed computer-aided to mean every step carried out by the central processor. I don't think it is so clear that the Supreme Court certainly did not identify what is in the gap between abstract idea and the machine test. And that is what this Court is obviously struggling. And I wish I could give more help to the Court. The only help that I can give to the Court in dealing with that is to look to the cases in which the Supreme Court has found an abstract idea, even if there is a machine in the form of a computer involved. And the only way I can make sense of those cases is to say that if all the machine is doing is carrying out the calculation of the algorithm or the formula, which is really the claimed invention, that's not enough to take what is otherwise an abstract idea into the realm of patentable subject matter under Section 101.102. Let me also confirm in response to Judge Plager's question, the 102 and 103 issues on the 427 patent have not been resolved. So they will be open on remand if this Court chooses to remand. Let me just make one brief comment on the other claim terms that were involved in the 841. I'm not going to argue the claim construction here. I don't have enough time and I'm happy to rely on my brief. I do want to address the waiver argument. That one argues that we only argued non-infringement under our claim construction, or at least the claim construction that the District Court adopted. And they say because we didn't argue non-infringement, we did not argue infringement, under the alternative claim constructions, you can simply affirm if you agree with them on their claim construction. I suggest, first of all, as we explained in our brief, we did address non-infringement even under some of their claim constructions. But more important, as this Court ruled in the Johns Hopkins case, there can't be a waiver to fail to cite prior art to make arguments against the claim construction that had not yet been adopted. Unfortunately, the summary judgment briefing took place before the District Court had adopted a claim construction. So if you agree with Route 1's claim construction, I suggest the proper course is to remand. Thank you. All right. Thank you very much. I don't think the cross-appeal  so I don't think there's really anything left for rebuttal. I think that's correct. I think that's right. So on that note, I thank all three counsel, and the case will be submitted.